# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### CENTRAL DIVISION

|  |  |  |
|---|---|---|
| TERESA KLEYA, | : | |
| PLAINTIFF, | : | Docket No.: |
| | : | |
| v. | : | |
| | : | |
| KARL STORZ ENDOVISION, INC., | : | |
| and JODI PECK, | : | |
| DEFENDANTS. | : | |

## COMPLAINT AND JURY DEMAND

### Nature of the Case

1.     This is an action for declaratory judgment, permanent injunctive relief and damages for injuries to Plaintiff as a result of Defendants' unlawful employment practices in violation of the Family & Medical Leave Act (hereinafter the "FMLA"), the Americans with Disabilities Act (the "ADA",) the Massachusetts Fair Employment Practices Act ("M.G.L. c. 151B"), and the anti-retaliation provisions of the Massachusetts Workers' Compensation Act ("M.G.L. c. 152").

2.     For more than fifteen (15) years, Mrs. Kleya ("Mrs. Kleya" or "Plaintiff"), was an employee in good standing and without discipline of Defendant Karl Storz ("Defendant Karl Storz"). In 2017, Mrs. Kleya asserted her rights to leave under the law. Almost immediately after taking leave and otherwise asserting her legal rights, the tone of Mrs. Kleya's workplace changed and Defendants subjected her to a campaign of harassment and retaliation, including: ignoring her, transferring her to a more physically demanding position; forcing her to stand during her

entire eight (8) hour shift; subjecting her to harassment, including frequent and unwarranted criticism; refusing to process her grievance; and placing her on an unwarranted Performance Improvement Plan. Ultimately, the Defendants forced Mrs. Kleya to quit the job she loved because of her disability, despite her continued hard work and dedication, despite her rights under FMLA, and/or in retaliation for asserting her rights under the FMLA, the ADA, M.G.L. c. 151B and M.G.L. c. 152. As a result of these unlawful actions, Mrs. Kleya suffered damages.

## The Parties

3.   Mrs. Kleya is an individual residing in Southbridge, Worcester County, Massachusetts, at all times relevant to this action. She is fifty-five (55) years of age, suffered a workplace injury and has a condition(s) that qualified as a disability and/or serious medical condition.

4.   Defendant KARL STORZ Endovision, Inc.'s ("Defendant Karl Storz" or Defendant Company) principal office is located at 91 Carpenter Hill, Charlton, Worcester County Massachusetts. Defendant Karl Storz is a global manufacturer and distributor of endoscopes, medical instruments, and devices.

5.   Defendant Jodi Peck (Defendant Peck) is, on information and belief, a resident of Dudley, Worcester County, Massachusetts. Defendant Peck worked at Defendant Company as a Supervisor of Material Control.

6.   Mrs. Kleya was as an employee of Defendant Karl Storz within the meaning of the FMLA, the ADA, M.G. L. c. 151B and M.G.L. c. 152 at all times described in this Complaint and Jury Demand ("Complaint").

2

7.   Defendant Karl Storz at all times described in this Complaint was Mrs. Kleya's employer within the meaning of the FMLA, the ADA, M.G.L. c. 151B and M.G.L. c. 152.

8.   Defendant Peck at all times described in this Complaint was a person within the meaning of the M.G.L. c. 151B.

## Jurisdiction and Venue

9.   Federal jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331.

10.   Supplemental jurisdiction over Plaintiff's state law claims is invoked pursuant to 28 U.S.C. § 1367.

11.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) in that all parties reside in and a substantial part of the events or omissions giving rise to the claims occurred in Worcester County, Massachusetts.

12.   On or about April 29, 2018, the Plaintiff filed a proper and timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which charge was cross-filed the Massachusetts Commission Against Discrimination ("MCAD").

13.   Plaintiff notified the MCAD and the EEOC that she would be removing her case and filing in federal court. The MCAD issued a dismissal, on or about September 25, 2018. The EEOC issued a dismissal, on or about October 24, 2018. Those dismissals are attached hereto as Exhibit A.

14.   All administrative and jurisdictional prerequisites to suit have been satisfied.

## Facts

15.  Mrs. Kleya began working for Defendant Company on or about April 10, 2002 as a Stockroom Coordinator.

16.  Among other conditions, Mrs. Kleya was diagnosed with Scoliosis as a child and has a degenerative disc disease. In 2017, she was diagnosed with anxiety and depression.

17.  Mrs. Kleya performed her duties in a satisfactory fashion. From her hire in 2002 until November 2017, Mrs. Kleya had never been written up or formally discipline.

18.  During those fifteen years, Mrs. Kleya consistently received positive performance reviews and obtained merit raises.

19.  As of 2011, Mrs. Kleya realized the physical demands of this position were taxing on her body and aggravating her Scoliosis and degenerative disc disease.

20.  Per company policy, Mrs. Kleya bid out of the materials group in or about December 2011. She bid into a position as the Manufacturing Coordinator in the Video Department. This job was less physically demanding.

21.  As the Manufacturing Coordinator, Mrs. Kleya was responsible for creating, releasing and confirming stock into scope building product; consuming inventory; detecting and remedying discrepancies; daily cycle counting with expectation to find root cause and correction of inventory and bill of material issues; compiling a bill of maintenance; and fixing and reporting any errors. Mrs. Kleya would also pick up and deliver parts around the building. Most of her duties were performed seated at her work station on a computer.

22.     In or about May 2017, Mrs. Kleya applied and was approved for leave under the
        FMLA.

23.     Prior to Mrs. Kleya's FMLA leave, Defendants informed her that upon her return
        from leave she would be transferred to the Manufacturing Coordinator II position
        in the Materials Group and that all Coordinators, including Mrs. Kleya, must
        report to a different supervisor, Defendant Peck.

24.     Defendant Peck worked as a Supervisor of Material Control.

25.     Mrs. Kleya returned from medical leave on or about June 7, 2017.

26.     When Mrs. Kleya returned from leave, she was informed that she must report to
        Defendant Peck, her new direct supervisor.

27.     Defendants' statement that all Coordinators would be required to report to
        Defendant Peck was false. Mrs. Kleya was the only Coordinator required to report
        to Defendant Peck.

28.     Rob Grendell, a peer of Mrs. Kleya, later volunteered to work with Defendant
        Peck.

29.     Upon information and belief, other than Mr. Grendell and Mrs. Kleya no other
        Coordinators were transferred solely under Defendant Peck's supervision.

30.     Upon information and belief, no other Coordinators on the day shift (other than
        Mrs. Kleya and Mr. Grendell) have been transferred under Defendant Peck's
        supervision to date. Upon information and belief, only two Coordinators on the
        second shift report to Defendant Peck for part of their shift.

31.     Defendant Peck treated Mrs. Kleya with hostility from the moment Mrs. Kleya
        began reporting to her. Defendant Peck engaged in artifice and scheme to drive

Mrs. Kleya's out of Defendant Company. Defendant Peck sent Mrs. Kleya

contradictory instructions and would attempt to discipline her when Mrs. Kleya

followed one of the directions. For example, Defendant Peck told Mrs. Kleya to

immediately inform her when certain events arose, and then she also told Mrs.

Kleya not to email her except on Tuesdays and Thursdays.

32.     Defendant Company inappropriately coded a portion of Ms. Kleya's FMLA time.

33.     Further, upon Mrs. Kleya's return from FMLA leave, Defendants made changes

to Mrs. Kleya's job that caused her physical pain and emotional distress and

aggravated her medical condition and disabilities.

34.     The Manufacturing Coordinator II position in the Materials Group is more

physically demanding than the Materials Coordinator position in the Video

Department.

35.     As part of Mrs. Kleya's new duties in the Materials Group, she was forced to

deliver parts around the Video and Mono/Vert department pushing a large,

unwieldy cart built by Defendants. The cart was over fifty (50) pounds and carried

a computer monitor, laptop computer, printer, and two metal bin rails with plastic

bins containing part. When transporting the parts, Mrs. Kleya had to maneuver

this heavy cart in and through aisles, following set routes.

36.     Upon information and belief, "ESI" is an Early System Intervention department at

Defendant Karl Storz meant to minimize injuries to Defendant Company's

employees. Upon information and belief, ESI had not been consulted in the design

and crafting of the cart, although it should have been.

37.     Mrs. Kleya took approved FMLA leave in or about September 2017 for

        bronchitis.

38.     After Mrs. Kleya's leave, Defendant Company told her that it was planning to

        change its leave policy to require employees to use their sick time while on

        FMLA leave. Defendant Company informed her that it was charging her vacation

        time for the time she was out on FMLA leave.

39.     Mrs. Kleya showed Defendant Company the only FMLA policy that had been

        distributed to employees, which stated employees did not have to use vacation

        time while on approved FMLA leave. Defendant Company eventually relented

        and did not take away vacation time for this leave.

40.     Prior to her FMLA leave, for more than 5 years, Mrs. Kleya was permitted to sit

        while performing work at her work station.

41.     After her FMLA leave, Mrs. Kleya was required to stand for her entire shift.

42.     Despite Mrs. Kleya's repeated requests that she have a stool to sit or lean against,

        Defendant Peck refused to permit Mrs. Kleya a stool. Defendant Peck justified

        this refusal by stating that it was not safe to put a stool in her location.

43.     There was no business reason Mrs. Kleya's computer needed to be in a location

        that precluded the use of a stool.

44.     Mrs. Kleya repeatedly asked that her work station be moved so that she could use

        a stool. Defendant Peck refused, stating Mrs. Kleya's position does not "require"

        that she be seated.

45.     Mrs. Kleya was the only Coordinator forced to stand for her entire shift each day.

46.     A large portion of Mrs. Kleya's duties were conducted stationary at her computer.

47. There is no work-related reason that she needed be standing while at her computer.

48. Mrs. Kleya requested a fatigue mat to relieve the strain on her legs, back and feet. Defendants failed to provide this mat for months.

49. On or about November 29, 2017, Mrs. Kleya suffered an injury when pushing the cart performing her duties. For weeks, she suffered from back spasms and leg cramps.

50. On or about November 30, 2017, Mrs. Kleya told the acting Stockroom Lead she could not push the cart anymore because it had and was continuing to injure her.

51. Mrs. Kleya also talked to Defendant Peck about her injury. Defendant Peck stated she needed to consult with Human Resources about this and would get back to Mrs. Kleya.

52. Defendants' treatment of Mrs. Kleya worsened over this time.

53. Defendants had Mrs. Kleya complete an injury report and scheduled her to see the company's preferred Workers' Compensation doctor.

54. The Workers' Compensation doctor sent Mrs. Kleya for X-rays. Defendants required Mrs. Kleya to use her personal health insurance.

55. The Workers' Compensation doctor placed Mrs. Kleya on light duty, including prescribing that she not push or pull the cart, or lift more than ten (10) pounds. The doctor also recommended that Mrs. Kleya sit every two (2) to three (3) hours.

56. Defendant Company has a policy requiring employees to report incidents of harassment. The policy states the company will thoroughly investigate the

complaint and the persons involved will be apprised of a determination, if appropriate.

57.    On or about December 7, 2017, Mrs. Kleya met with Human Resources employee Jessica Barnes to request file a grievance regarding Defendants treatment of her. Human Resources refused to accept the complaint. Ms. Barnes refused to investigate the complaint. She directed Mrs. Kleya back to Defendant Peck, an individual Mrs. Kleya felt was harassing her.

58.    Ms. Barnes refused to file the grievance and referred Mrs. Kleya back to Ms. Barnes.

59.    Ultimately, on or about December 20, 2017, the Workers' Compensation doctor placed Mrs. Kleya on permanent modified duty of no lifting more than 10 pounds, no pushing or pulling, no reaching, and a recommendation of stretching every hour.

60.    Almost immediately after taking leave, as well as filing her internal and Workers' Compensation complaints, the tone of Mrs. Kleya's workplace changed and Defendants subjected her to retaliation because of her complaints, including: ignoring her; comparing her unfavorably to Mr. Grendell; discriminating against her; transferring her to a more physically demanding position; forcing her to stand for her entire shift; engaging in a campaign designed to cause her to quit or to support her termination; subjecting her to unreasonable and unwarranted criticism; failing to timely provide a fatigue mat; and placing her on an unwarranted Performance Improvement Plan.

61. Defendants changed Mrs. Kleya's entry into the building, stating the door was too heavy for her restrictions. Defendants also required that she not use the bathroom in her area. The bathroom they required her to use required a long walk and use of an elevator.

62. Defendant Peck and Ms. Barnes issued Mrs. Kleya a Performance Improvement Plan (PIP) on or about January 2, 2018. The PIP accused her of not properly executing standard work, communicating, or "teaming."

63. This PIP was not reflective of her performance. The PIP falsely and negatively rated her performance.

64. Because the PIP was false, Mrs. Kleya declined to sign it. She told Defendants that she had documentation supporting her assertions that the PIP contained false information and was retaliatory. Defendants stated any evidence would not change the PIP. Defendants refused to look at her documentation on both January 2, 2018 and January 3, 2018.

65. Defendant Peck and Ms. Barnes stated the meeting would resume at 1:30 p.m. the next day and they would inform Mrs. Kleya whether the PIP would stand.

66. On January 3, 2018, Defendant Peck and Barnes informed Mrs. Kleya the PIP would stand and reiterated that they did not want to look at the evidence.

67. Mrs. Kleya told Defendants she felt this unwarranted PIP was further harassment and retaliation due to her disability and assertion of her rights, including taking leave time. Mrs. Kleya reminded Ms. Barnes that in December Mrs. Kleya had requested to file a grievance in response to Defendant Peck's harassment and retaliation, but Ms. Barnes had refused to process it.

68.   Mrs. Kleya stated that she felt she was being set up since she had been transferred to Defendant Peck in a more physically demanding position in May 2017, after taking approved leave and requesting accommodation.

69.   Mrs. Kleya asked Defendants to reconsider the PIP, or she would have no choice but to give her two weeks' notice. Since Defendants were discrimination and retaliating against her, and human resources was endorsing this treatment, Mrs. Kleya felt she had no choice but to resign.

70.   Defendants would not reconsider and maintained their refusal to view Mrs. Kleya's proof that the PIP was unwarranted. They refused to offer options to her resignation.

71.   On or about January 3, 2018, Mrs. Kleya felt she had no option but to resign. She resigned offering two weeks' notice. She noted in her resignation letter that she did not want to resign.

72.   Defendants called Mrs. Kleya on January 3, 2018 and told her not to come back to work. She was paid for her two weeks' notice through January 17, 2018.

73.   Mrs. Kleya contacted Defendant's President, Bruce Watkins. She explained to him that she did not want to quit, as well as what had led her to that point. Rather than resolving the issues or agreeing to review her proof, he referred her back to his subordinate Ms. Barnes - who had presented Mrs. Kleya with the PIP and did not want to hear her information.

74.   Mrs. Kleya sent Ms. Barnes an email with more information. Despite having access to all the information that Mrs. Kleya described to her, Ms. Barnes did not reinstate Mrs. Kleya's position.

75.     Ms. Barnes reiterated that Mrs. Kleya had resigned and was no longer an

        employee.

76.     Defendants' treatment of Mrs. Kleya was in marked contrast to the treatment of

        her coworkers who had not taken protected actions and were not disabled.

77.     Mrs. Kleya was constructively discharged for asserting her legal rights.

78.     Defendants did not follow Defendant Company's written policies regarding

        grievances, leave, retaliation, discrimination and disability accommodation in

        regard to Mrs. Kleya.

79.     Mrs. Kleya's work environment was pervaded by harassment and abuse, resulting

        in intimidation, humiliation and stigmatization. It posed a formidable barrier to

        her full participation in the workplace. The working conditions were so difficult

        and unpleasant as to be intolerable and Mrs. Kleya reasonably felt forced to

        resign. This treatment was humiliating and caused her to experience significant

        anxiety.

80.     Defendants actions resulted in the constructive discharge of Mrs. Kleya.

                            *The Defendants' Motivation*

81.     The ostensible reason for the Plaintiff's dismissal was pretextual.

82.     The Defendants' conduct, as more particularly set forth above, was willful and

        knowing.

83.     The Defendants' conduct, as more particularly set forth above, was intended to

        and did harm the Plaintiff.

84.     The Defendants' conduct, as more particularly set forth above, has caused the

        Plaintiff to suffer emotional distress, and continues to do so.

85.   The Defendants' conduct, as more particularly set forth above, was made with the knowledge and intent to violate state and federal law.

86.   The Defendants' conduct, as more particularly set forth above, was carried out with malice.

87.   The Defendants' conduct, as more particularly set forth above, was outrageous and egregious, and warrants condemnation and deterrence.

### COUNT I: Violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. Against Defendant Karl Storz

88.   Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 87 and incorporates them by reference herein.

89.   Defendant Karl Storz is an employer under the FMLA, 29 U.S.C. § 2611(4), and subject to its provisions.

90.   The Plaintiff's conditions of bronchitis, Scoliosis, degenerative disc disease and the injuries suffered from her workplace injury on or about November 29, 2017, which resulted in a period of incapacity followed by continuing treatment constituted a serious health condition pursuant to 29 U.S.C. § 2611(11).

91.   The Plaintiff's ongoing conditions of anxiety and depression, all of which at times necessitated absences from work, constituted one or more serious health conditions pursuant to 29 U.S.C. § 2611(11).

92.   As outlined above, Defendant Karl Storz knew or should have known that Mrs. Kleya has a qualifying condition under the FMLA.

93.   Under the FMLA, 29 U.S.C. § 2612, Plaintiff was entitled to take up to 12 weeks of intermittent leave during any 12-month period.

94.     Defendant Karl Storz had a duty to refrain from interfering with, restraining, and/or denying the exercise or the attempt to exercise Plaintiff's rights under 29 U.S.C. §§ 2611, *et seq*.

95.     As more particularly described above, Defendant Karl Storz interfered with the Plaintiff's exercise of her rights under FMLA.

96.     The interference described above violated the Plaintiff's rights under the FMLA.

97.     Plaintiff suffered damages as a result of these unlawful acts.

98.     Defendant Karl Storz is liable to the Plaintiff for violating her rights under the FMLA, 29 U.S.C.§ 2612.

## COUNT II: Retaliation for Use of the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. Against Defendant Karl Storz

99.     Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 99 and incorporates them by reference herein.

100.    Defendant Karl Storz was aware of Plaintiff's protected activities.

101.    By retaliating against Plaintiff in divers ways as more particularly described above, Defendant Karl Storz retaliated against Plaintiff for exercising her rights under the FMLA.

102.    Retaliation for the exercise of rights protected by the FMLA is a violation of law. 29 U.S.C. § 2615(a).

103.    Plaintiff suffered damages as a result of this unlawful conduct.

104.    Defendant Karl Storz's conduct in retaliating against the Plaintiff for the exercise of her rights under FMLA was willful and intentional.

105.    Defendant Karl Storz is liable to the Plaintiff for violating her rights under the FMLA, 29 U.S.C.§ 2612.

## COUNT III: Violation of Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.: Failure to Accommodate Against Defendant Karl Storz

106.   Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 105 and incorporates them by reference herein.

107.   Plaintiff was, at all times, a qualified individual with a disability who was able to perform the essential functions of her position with or without accommodation.

108.   Plaintiff suffered from ongoing impairments including, Scoliosis, degenerative disc disease, anxiety and depression. These impairments at times necessitated absences from work, required ongoing medical treatment and substantially impaired her ability to think, concentrate, walk and/or work (among other major life activities).

109.   Plaintiff's condition constituted a disability under the ADA, as amended, 42 U.S.C. § 12101, et seq.

110.   Defendant Karl Storz had notice of Mrs. Kleya's disabilities and need for accommodation.

111.   Defendant Karl Storz had a duty to provide Plaintiff with reasonable accommodations that did not impose an undue hardship.

112.   On multiple occasions, Plaintiff made requests for reasonable accommodation, including requesting a chair while at her computer, requesting not to push the cart, requesting a fatigue mat to stand on, and leave. Defendant Karl Storz delayed or outright denied each of these requests.

113.   These accommodations were reasonable and would not have caused Defendant Karl Storz's undue hardship.

114.  Further, Defendant Karl Storz failed to engage with Plaintiff in an interactive dialogue in good faith.

115.  The Plaintiff has suffered damages as a result of Defendant Karl Storz's violations of law set forth above.

116.  Defendant Karl Storz is liable for the violations of law set forth above.

### COUNT VI: Violation of Americans with Disabilities Act, 42 U.S.C. § 12101. et seq.: Discrimination and Retaliation Against Defendant Karl Storz

117.  Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 116 and incorporates them by reference herein.

118.  Defendant Karl Storz discriminated against the Plaintiff on account of her disability by, *inter alia*, ignoring her; comparing her unfavorably to Mr. Grendell; discriminating against her; transferring her to a more physically demanding position; forcing her to stand for her entire shift; engaging in a campaign designed to cause her to quit or to support her termination; subjecting her to unreasonable and unwarranted criticism; failing to timely provide a fatigue mat; and placing her on an unwarranted Performance Improvement Plan, as more particularly described above.

119.  Defendant Karl Storz had notice of the Plaintiff's disability and of her protected activities. Defendant Karl Storz's unlawful conduct, described herein, was motivated by Plaintiff's disability and her protected activities.

120.  In the alternative, Defendant Karl Storz regarded the Plaintiff as having a disability, and discriminated against her on account of its perception that the Plaintiff's condition constituted a disability as defined by the ADA, as amended.

121.    Defendant Karl Storz had a duty to refrain from discriminating against the
        Plaintiff on account of her disability or perceived disability

122.    The Plaintiff suffered damages as a result of Defendant Karl Storz's violations of
        law.

123.    Defendant Karl Storz is liable for the violations of law set forth above.

124.    Defendant Karl Storz's acts of discrimination against the Plaintiff, as more
        particularly described above, were made with malice or with reckless indifference
        to Mrs. Kleya's federally protected rights.

### COUNT V: Violation of Mass. Gen. Laws c. 151B, § 4(16), Handicap Discrimination Against Defendant Karl Storz

125.    Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 124 and
        incorporates them by reference herein.

126.    Plaintiff was, at all times, a qualified individual with a handicap who was able to
        perform the essential functions of her position with or without accommodation.

127.    Plaintiff's condition(s) constituted a handicap(s) under Mass. Gen. Laws c. 151B,
        § 4(16).

128.    Defendant Karl Storz discriminated against the Plaintiff on account of her
        handicap by, *inter alia*, ignoring her; comparing her unfavorably to Mr. Grendell;
        discriminating against her; transferring her to a more physically demanding
        position; forcing her to stand for her entire shift; engaging in a campaign designed
        to cause her to quit or to support her termination; subjecting her to unreasonable
        and unwarranted criticism; failing to timely provide a fatigue mat; and placing her
        on an unwarranted Performance Improvement Plan, as more particularly
        described above.

129.   The Defendants' harassment and constructive discharge of Plaintiff were motivated by Plaintiff's disability and protected activities.

130.   In the alternative, Defendant Karl Storz regarded the Plaintiff as having a handicap or impairment as defined by Mass. Gen. Laws c. 151B, § 1(17), and discriminated against her on the basis of that perception.

131.   Defendant Karl Storz had a duty to refrain from discriminating against the Plaintiff on account of her handicap or on account of a perceived handicap.

132.   Defendant Karl Storz had a duty to provide Plaintiff with reasonable accommodations that did not impose an undue hardship.

133.   On multiple occasions, Defendant Karl Storz denied or unreasonable delayed Plaintiff's requests for reasonable accommodation, including her requests to sit while at her computer, to not push the cart, for a fatigue mat to stand on, and for leave. Defendant Karl Storz delayed or outright denied each of these requests.

134.   These accommodations were reasonable and would not have caused Defendant Karl Storz undue hardship.

135.   Further, Defendant Karl Storz failed to engage with Plaintiff in an interactive dialogue in good faith.

136.   The Plaintiff has suffered damages from the violations of law set forth above.

137.   Defendant Karl Storz is liable for the violations of law set forth above.

138.   Defendant Karl Storz's acts of discrimination against the Plaintiff, as more particularly described above, were outrageous or egregious and warrant punishment.

### COUNT VI: Violation of Mass. Gen. Laws c. 151B, § 4(4), Retaliation Against All Defendants

139.   Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 138 and incorporates them by reference herein.

140.   As outlined above, the Defendants constructively discharged, retaliated and discriminated against Plaintiff because she opposed the Defendants' violation of her rights under Mass. Gen. Laws c. 151B, § 4.

141.   The Plaintiff has suffered damages from the violations of law set forth above.

142.   The Defendants are liable for the violations of law set forth above.

143.   The Defendants' acts of discrimination against the Plaintiff, as more particularly described above, were outrageous or egregious and warrant punishment.

## COUNT VII: Violation of Mass. Gen. Laws c. 151B, §4(4A), Coercion, Intimidation, Interference and Threats Against Defendant Peck

144.   Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 144 and incorporates them by reference herein.

145.   As outlined above, Defendant Peck coerced, intimidated, and threatened Plaintiff for, and interfered with Plaintiff's exercise and enjoyment of her rights to a reasonable accommodation and to be free from discrimination and retaliation.

146.   The Plaintiff has suffered damages from the violations of law set forth above.

147.   Defendant Peck is liable for the violations of law set forth above.

148.   Defendant Peck's acts of discrimination against the Plaintiff, as more particularly described above, were outrageous or egregious and warrant punishment.

## COUNT VIII: Violation of Mass. Gen. Laws c. 151B, § 4(5), Aiding and Abetting Against Defendant Peck

149.   Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 148 and incorporates them by reference herein.

150.   As outlined above, Defendant Peck aided, abetted, incited, compelled or coerced the doing of acts forbidden under Mass. Gen. Laws c. 151B.

151.   The Plaintiff has suffered damages from the violations of law set forth above.

152.   Defendant Peck is liable for the violations of law set forth above.

153.   Defendant Peck's acts of discrimination against the Plaintiff, as more particularly described above, were outrageous or egregious and warrant punishment.

**COUNT IX: Violation of Mass. Gen. Laws c. 152, § 75B(2),**
**Retaliation for Workers' Compensation Against Defendant Karl Storz**

154.   Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 153 and incorporates them by reference herein.

155.   Defendants were aware that Plaintiff engaged in activity protected by the Workers' Compensation Act.

156.   As outlined above, the Defendants terminated and discriminated against Plaintiff because she engaged in activity protected by the Workers' Compensation Act.

157.   The Plaintiff has suffered damages from the violations of law set forth above.

158.   The Defendants are liable for the violations of law set forth above.

WHEREFOR, Plaintiff prays the court to:

   a.   Adjudge Defendant Karl Storz liable for the violations of law set forth in Count I.

   b.   Adjudge Defendant Karl Storz liable for the violations of law set forth in Count II.

   c.   Adjudge Defendant Karl Storz liable for the violations of law set forth in Count III.

d. Adjudge Defendant Karl Storz liable for the violations of law set forth in Count IV.

e. Adjudge the Defendant Karl Storz liable for the violations of law set forth in Count V.

f. Adjudge the Defendants liable for the violations of law set forth in Count VI.

g. Adjudge Defendant Peck liable for the violations of law set forth in Count VII.

h. Adjudge Defendant Peck liable for the violations of law set forth in Count VIII.

i. Adjudge Defendant Karl Storz liable for the violations of law set forth in Count IX.

j. Award the Plaintiff lost wages, benefits and other economic losses according to law.

k. Award the Plaintiff damages for emotional pain and suffering according to law.

l. Award the Plaintiff liquidated damages, as provided by law.

m. Award the Plaintiff punitive damages, as provided by law.

n. Award the Plaintiff pre- and post-judgement interest, according to law.

o. Award the Plaintiff her costs and reasonable attorneys' fees, as provided by law.

p. Grant the Plaintiff such additional relief, including equitable relief, as the court deems reasonable and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on her claims.

                                       Respectfully submitted,
                                       TERESA KLEYA,
                                       By her attorney,

Dated: December 14, 2018

                                       /s/ Melissa A. Pomfred
                                       Melissa Pomfred (BBO# 665682)
                                       melissa@pomfredlaw.com
                                       Pomfred Law Offices, PLLC
                                       5 East Street
                                       Franklin, MA 02038
                                       P: (508) 321-7859
                                       F: (508) 321-9333

# EXHIBIT A

THE COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION
One Ashburton Place, Boston, MA 02108
Phone:  (617) 994-6000 Fax:  (617) 994-6024

## - DISMISSAL -

| To: | Teresa Kleya<br>284 North Woodstock Road<br>Southbridge, MA 01550 | **Case:** Teresa Kleya v. Karl Storz Endovision, Inc., Jodi Peck<br>**MCAD Docket Number:** 18BEM02486<br>**EEOC Number:** 523-2018-00478<br>**Investigator:** Ying Mo |
|---|---|---|

Your complaint has been dismissed for the following reasons:

[ ]   The facts alleged fail to state a claim under any of the statutes the Commission enforces.

[ ]   Respondent employs fewer than the required number of employees.

[ ]   Your complaint was not timely filed with the Commission, i.e. you waited too long after the date(s) of the alleged discrimination to file.  Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[ ]   You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your complaint.  You have had more than 30 days in which to respond to our written request.

[ ]   The Commission's efforts to locate you have been unsuccessful.  You have had at least 30 days in which to respond to a notice sent to your last known address.

[ ]   The Respondent has made a reasonable settlement, offering full relief for the harm you alleged.  30 days have expired since you received actual notice of this settlement offer.

[ ]   The Commission issues the following determination.  Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes a violation of the statutes.  This does not certify that the Respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this complaint.

[x]   Other (briefly state) Complainant through counsel wish to withdraw claim to file in court.

Sunila Thomas George
Investigating Commissioner

Date   9-25-18

Cc:
Karl Storz Endovision, Inc.
Attn: Director of Human Resources
91 Carpenter Hill
Charlton, MA 01507

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Teresa F. Kleya<br>284 N Woodstock Rd<br>Southbridge, MA 01550 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 523-2018-00478 | Edward J. Ostolski,<br>Investigator | (617) 565-3214 |

(See also the additional information enclosed with this form.)

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

|  | More than 180 days have passed since the filing of this charge. |
|---|---|
| X | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| X | The EEOC is terminating its processing of this charge. |
|  | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

|  | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
|  | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Kenneth An*

OCT 2 4 2018

Enclosures(s)

**Feng K. An,
Area Office Director**

*(Date Mailed)*

cc:
Laurie F. Rubin, Esq.
Prince Lobel Tye, LLP
One International Place
Suite 3700
Boston, MA 02110

Melissa Pomfred, Esq.
POMFRED LAW OFFICES
5 East Street
Franklin, MA 02038