# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERESA KLEYA, | ) |
|         Plaintiff, | ) CIVIL ACTION |
| v. | ) NO. 18-40206-TSH |
| KARL STORZ ENDOVISION, INC., and JODI PECK, | ) |
|         Defendants. | ) |

## ORDER AND MEMORANDUM ON DEFENDANT'S MOTION TO DISMISS (Docket No. 6)

**June 25, 2019**

**HILLMAN, D.J.**

Teresa Kleya ("Plaintiff") filed this action against Karl Storz Endovision, Inc. ("Karl Storz") and Jodi Peck ("Defendant Peck") (collectively "Defendants") following her resignation from her employment at Karl Storz. She claims violation of the Family and Medical Leave Act ("FMLA") (Count I); retaliation for use of the FMLA (Count II); violation of the Americans with Disabilities Act (Counts III & IV)[1]; violation of Mass. Gen. Laws ch. 151B (Counts V, VI, VII, & VIII); and violation of Mass. Gen. Laws ch. 152 (Count IX). Defendants have moved to dismiss all claims for failure to state a claim upon which relief can be granted. (Docket No. 6). For the reasons stated below, Defendants' motion is ***granted*** in part and ***denied*** in part.

## Background

---

[1] Count IV is mistakenly numbered Count VI in Plaintiff's Complaint.

The following facts are taken from Plaintiff's Complaint (Docket No. 1) and assumed to be true at this stage in the litigation.

On April 10, 2002 Plaintiff began working at Karl Storz as a Stockroom Coordinator. From the start of her employment until November 2017, Plaintiff had never been formally disciplined and consistently received positive performance reviews.

Plaintiff was diagnosed with Scoliosis as a child and suffers from degenerative disc disease. In 2017, she was also diagnosed with anxiety and depression. In 2011, Plaintiff realized the physical demands of her job aggravated her Scoliosis and degenerative disc disease. Consequently, in December 2011, Plaintiff "bid out" of the materials group into a position as the Manufacturing Coordinator in the Video Department. Most of her job duties in this new role were performed seated at her workstation.

In May 2017, Plaintiff applied and was approved for a leave under the FMLA. On June 7, 2017, Plaintiff resumed work. Defendants informed Plaintiff that upon her return, she would be transferred to the "Manufacturing Coordinator II position" in the Materials Group. This position was more physically demanding and required Plaintiff to deliver parts by pushing a cart over fifty pounds.

Plaintiff was also informed that, upon her return, Defendant Peck would be her new supervisor. Plaintiff was the only Coordinator on the day shift required to report to Defendant Peck although Rob Grendell, one of Plaintiff's coworkers, also volunteered to work with Defendant Peck. According to Plaintiff, Defendant Peck was hostile towards her immediately upon her return to work and engaged in a scheme to drive her out of the company. For instance, Plaintiff alleges that Defendant Peck gave her inconsistent instructions and attempted to discipline

her for only following one.  In addition, Defendant Peck ignored Plaintiff and compared her unfavorably to Mr. Grendell.

In September 2017, Plaintiff took another FMLA leave for bronchitis.  Upon her return, Plaintiff was required to stand for her entire shift.  Plaintiff made several requests for a stool as most of her duties were at her workstation, but Defendant Peck refused because her position did not require her to sit.  According to Plaintiff, she was the only Coordinator forced to stand for her entire shift.  Plaintiff additionally requested a fatigue mat, which was eventually provided after several months.  In May 2017, Plaintiff again applied for FMLA leave, which Karl Storz approved.

On November 29, 2017, Plaintiff was injured while pushing the cart.  A Workers' Compensation doctor concluded that Plaintiff should not push or pull the cart or lift more than ten pounds.  The doctor further recommended that she sit every few hours.

On December 7, 2017, Plaintiff asked Jessica Barnes, who worked in Human Resources, to file a grievance regarding Defendants' conduct.  Ms. Barnes refused to accept or investigate the complaint and instructed Plaintiff to see Defendant Peck about her concerns.

On December 20, 2017, the Workers' Compensation doctor placed Plaintiff on permanent modified duty which consisted of no pushing or pulling, no reaching, and advised stretching every hour.  After her Workers' Compensation claim, Plaintiff alleges that Defendants required her to use a different entrance to the building because the door was too heavy given her restriction.  In addition, Defendants required Plaintiff to use a different bathroom that was a long walk away instead of the one in her work area.

On January 2, 2018, Defendant Peck and Ms. Barnes issued a Performance Improvement Plan ("PIP") for Plaintiff.  The PIP noted that Plaintiff was not properly executing standard work, communicating, or "teaming."  Plaintiff contended that the PIP was not reflective of her true

performance and consequently declined to sign it. The next day, when Defendants refused to reconsider the PIP, Plaintiff felt she had no choice but to resign from Karl Storz.

## Legal Standard

A defendant may move to dismiss, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000). It is a "context-specific task" to determine "whether a complaint states a plausible claim for relief," one that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). On the other hand, a court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

## Discussion

*1. Interference Claim (Count I)*

The FMLA makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of" any FMLA-protected right. 29 U.S.C. § 2615(a)(1). "Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 U.S.C. § 825.220(b).

To make a *prima facie* case for an FMLA interference claim, "an employee [must] show: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 722 n.8 (1st Cir. 2014). Therefore, to survive a motion to dismiss "[t]he key issue is simply whether the employer provided its employee the benefits to which she was entitled per the FMLA." *Id.* (citing *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)).

Here, Plaintiff received all her requested leaves. In other words, Karl Storz provided Plaintiff the benefits to which she was entitled per the FMLA. Consequently, Count I must be dismissed.[2]

*2. Disability Discrimination Claims (Counts III, IV, V, VII, & VIII)*

---

[2] Because Plaintiff was granted FMLA leave, her FMLA claim is more appropriately characterized as a retaliation claim and analyzed as such below. *See Chacon v. Brigham & Women's Hosp.*, 99 F. Supp. 3d 207, 214 (D. Mass. 2015) ("[A]n employer who simply blocks an employee from taking leave to which she is entitled has committed non-retaliatory interference with the substantive rights afforded by the FMLA. But an employer who terminates an employee from exercising or attempting to exercise her FMLA rights has committed a retaliatory act of interference that must be evaluated under the retaliation framework."); *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 331-32 (1st Cir. 2005) ("Whether a claim is characterized as interference or not, its elements actually differ depending on whether the plaintiff is, at bottom, claiming that the employer denied his or her substantive rights under the MFLA or that the employer retaliated against him or her for having exercised or attempted to exercise those rights.").

Plaintiff brings disability discrimination claims under the ADA and Mass. Gen. Laws ch. 151B. She alleges failure to accommodate (Counts III and VI) and discrimination (Counts IV and V). In addition, Plaintiff brings claims against Defendant Peck pursuant to Chapter 151B (Counts VII and VIII).

### a. Failure to Accommodate Claims (Count III)

"Where a plaintiff alleges a failure to accommodate, the plaintiff must show that the employer knew about plaintiff's disability and did not reasonably accommodate it." *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012); *see also Mulloy v. Acushnet Co.*, 460 F.3d 141, 154-55 (1st Cir. 2006) (applying federal standard to Chapter 151B claims). "An accommodation request must be sufficiently direct and specific, and it must explain how the accommodation is linked to plaintiff's disability. The obligation is on the employee to provide sufficient information to put the employer on notice of the need for accommodation." *Jones*, 696 F.3d at 89 (citations omitted).

Plaintiff claims she made requests for reasonable accommodations on multiple occasions, "including requesting a chair while at her computer, requesting not to push the cart, requesting a fatigue mat to stand on, and leave." (Docket No. 1 ¶ 112). Plaintiff also alleges that Defendants "had notice of [Plaintiff's] disabilities and need for accommodation." *Id.* ¶ 110. *See Hines v. Boston Public Schools*, 264 F. Supp. 3d 329, 335 (D. Mass. 2017) (noting that to state an accommodation claim plaintiff must plead that defendant knew of her disability and failed to accommodate it). Plaintiff's claims are admittedly thin, but she has done enough at this stage to make her claims plausible. *See Cox v. Massachusetts Dept. of Correction*, 18 F. Supp. 3d 38, 49 (D. Mass. 2014) (denying motion to dismiss failure-to-accommodate claim where "[t]he complaint alleges that defendants knew of plaintiff's disability and of his need for a modification"); *Achal v.*

*Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 799 (N.D. Cal. 2015) (denying motion to dismiss although the plaintiff's "claim is thin" because, among other reasons, the complaint "does allege that [defendant] was aware of his disability"). *Cf. Prisco v. Air Indus. Grp.*, 2017 WL 9485663, at *10 (E.D.N.Y. Sep. 1, 2017) (dismissing claim where "the complaint fails to allege how the injuries . . . impacted his life activities in any way during the time period he was employed by Defendants" and where there were "no factual allegations alleged which would provide a basis to find that Defendants' believed such injury to be anything other than transient, which cannot support a claim that the Plaintiff was disabled"). Accordingly, Count III survives this motion.[3]

### b.  Disability Discrimination (Counts IV & V)

The ADA proscribes discrimination against "a qualified individual with a disability"—meaning, "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"—"based on that disability." 42 U.S.C. §§ 12111(8), 12112(a). "To establish a claim under the ADA, a plaintiff must prove three factors by a preponderance of the evidence: (1) she was disabled within the meaning of the ADA; (2) she was qualified to perform the essential functions of the job, either with or without reasonable accommodation; and (3) the employer took an adverse employment

---

[3] While Defendants assert that the claims against Defendant Peck for individual liability should be dismissed, they proffer no arguments why those claims warrant dismissal. Nonetheless, the Court notes that the plausibility of Count III coupled with some of the allegations in Plaintiff's Complaint warrants finding Counts VII and VIII are also plausible. *See, e.g.*, Docket No. 1 ¶¶ 42, 44 ("Despite [Plaintiff's] repeated requests that she have a stool to sit or lean against, Defendant Peck refused to permit [Plaintiff] a stool" because "it was not safe to put a stool in her location" and Plaintiff's "position [did] not 'require' that she be seated"). Put another way, it is also plausible that Defendant Peck interfered with Plaintiff's rights to have a reasonable accommodation (Count VII). *See* Mass. Gen. Laws ch. 151B, § 4(4A) ("It shall be unlawful practice: For any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter . . . ."). Additionally, it is plausible that Defendant Peck aided Karl Storz efforts in failing to accommodate Plaintiff (Count VIII). *See* Mass. Gen. Laws ch. 151B, § 4(5) ("It shall be unlawful practice: For any person, whether an employer or an employee or not, to aid, abet, incite, or compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so.").

action against her because of the alleged disability." *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 32 (1st Cir. 2011) (citation omitted); *see also Mulloy*, 460 F.3d at 154 ("In order to establish a claim of unlawful employment discrimination under Chapter 151B, a plaintiff must demonstrate the same three requirements as under the ADA . . . ."); *Labonte v. Hutchins & Wheeler*, 424 Mass. 813, 678 N.E.2d 853, 856 n.5 (1997) ("[O]ur statues in the area of employee discrimination law closely mirror the [ADA].").

Defendants contend that Plaintiff fails to plausibly allege that she was disabled within the meaning of the ADA and that Defendants took adverse employment action against her because of her disability. (Docket No. 7, at 11).

### i.   *Whether Plaintiff Has a Disability*

"An individual is disabled for purposes of the ADA if he (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Roman-Oliveras v. Puerto Richo Elec. Power Auth.*, 655 F.3d 43, 48 (1st Cir. 2011) (citation omitted); *see also* 42 U.S.C. § 12102(1).

Plaintiff asserts that her "impairments at times necessitated absences from work, required ongoing medical treatment and substantially impaired her ability to think, concentrate, walk and/or work (among other major life activities)." (Docket No. 1 ¶ 108). Taking these allegations as true, it is plausibly that Plaintiff qualifies as disabled within the meaning of the ADA. *Cf. Leonard v. American Med. Response*, 2009 WL 1883725, at *3 (D. Mass. July 1, 2009) (dismissing ADA claim where plaintiff made no allegations that his emotional disorder affected major life activities).

### ii.   *Whether Defendants Took Adverse Action*

"An adverse employment action is one that affects employment or alters the conditions of the workplace, and typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Morales–Vallellanes v. Potter*, 605 F.3d 27, 35 (1st Cir. 2010) (quotation marks, alterations, and citations omitted). More generally, the Supreme Court held that adverse actions encompass "employer actions that would have been materially adverse to a reasonable employee" and "must be harmful to the point that they could well dissuade a reasonable worker from" engaging in protected activity. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

I find that Plaintiff's PIP plan does not qualify as an adverse action because it did not alter the terms or conditions of her employment. *See Simon v. Vanguard Med. Assocs., Inc.*, 2015 WL 7201170, at *7 (D. Mass. Nov. 16, 2015) ("Placing an employee on an improvement plan without any changes in his conditions of employment . . . fails the adverse action test."); *James v. C-Tran*, 130 Fed. App'x. 156, 157 (9th Cir. 2005) ("Because the performance improvement plan was non-disciplinary training that did not materially impact [the employee's] compensation, terms, conditions, or privileges of employment, it was not an adverse employment action."); *Brown v. Am. Golf. Corp.*, 99 Fed. App'x. 341, 343 (2d. Cir. 2004) (same). *Cf. Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000) ("An unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.").

A claim for constructive discharge "typically 'refers to harassment so severe and oppressive that staying on the job while seeking redress—the rule save in exceptional cases—is intolerable.'" *Gerald v. Univ. of P.R.*, 707 F.3d 7, 25 (1st Cir. 2013) (quoting *Lee–Crespo v.*

*Schering–Plough Del Caribe, Inc.*, 354 F.3d 34, 45 (1st Cir. 2003)). Plaintiff claims she felt forced to resign after Defendants declined to reconsider the PIP and refused to review her evidence that the PIP was unwarranted. These allegations are simply not enough for the Court to infer a constructive discharge. First, while Plaintiff asserts the PIP accused her of not satisfactorily executing standard work, communicating, or "teaming," she fails to explain the contents of the PIP. Consequently, it is impossible for the Court to assess whether its terms created an intolerable work environment. Further, Defendants' refusal to reconsider the PIP is itself not "harassment so severe and oppressive" that a reasonably employee would find staying on the job intolerable. Accordingly, I find that the issuance or refusal to reconsider the PIP are not adverse employment actions.

I do find, however, that Plaintiff's job changes constitute adverse actions. Plaintiff's reassignment to the "Manufacturing Coordinator II" position was more physically demanding and required Plaintiff to deliver parts by pushing a cart over fifty pounds. I find this change qualifies as a "reassignment with significantly different responsibilities" to constitute an adverse employment action. *Morales–Vallellanes*, 605 F.3d at 35. *Cf. Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 23 (1st Cir. 2002) ("[A] transfer or reassignment that involves only minor changes in working conditions normally does not constitute an adverse employment action."). In addition, forcing Plaintiff to stand all day and refusing to provide a fatigue mat also might "dissuade a reasonable worker from" engaging in the protected activity and therefore constitutes an adverse employment action. *See Burlington Northern*, 548 U.S. at 57.

Plaintiff claims that "Karl Storz discriminated against [her] on account of her disability." (Docket No. 1 ¶ 118). The most natural inference from Plaintiff's complaint, however, is that the change in her employment conditions was a response to her FMLA leave. Indeed, Plaintiff alleges

that "upon [her] return from FMLA leave, Defendants made changes to [her] job that caused her physical pain and emotional distress and aggravated her medical condition and disabilities." *Id.* ¶ 33. Thus, I find that the temporal proximity between Plaintiff's FMLA leaves and the adverse employment actions makes the causal link between the adverse actions and her disabilities unlikely. Further, Plaintiff has done nothing to demonstrate a link between her disabilities and the adverse actions other than the conclusory assertion that there is one. That is not enough. *See Twombly*, 550 U.S. at 555 (holding that plausibility pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Accordingly, Counts IV and V must be dismissed.[4]

### 3. Retaliation Claims (Counts II, IV, VI, & IX)

Plaintiff alleges retaliation under the FMLA, the ADA, Mass. Gen. Laws ch. 151B, and Mass. Gen. Laws ch. 152, § 75B(2).[5]

"Case law recognized that an ADA plaintiff need not succeed on a disability discrimination claim in order to assert a claim for retaliation." *Colon-Fontanez*, 660 F.3d at 36. Accordingly, despite the dismissal of Plaintiff's disability discrimination claims, the Court will proceed to assess the viability of her retaliation claims.

To make out a *prima facie* case of retaliation, an employee must how: (1) she engaged in protected activity or availed herself of a protected right[6]; (2) she was adversely affected by an

---

[4] Count IV alleges discrimination and retaliation based on Plaintiff's alleged disability. Therefore, Count IV is dismissed insofar as it is based on discrimination. I will address the retaliation portion of the claim below.

[5] Although the FMLA does not explicitly permit retaliation claims, it is well-established that a cause of action for retaliation exists under the FMLA. *See Henry v. United Bank*, 686 F.3d 50, 55 (1st Cir. 2012) ("The [FMLA] also prohibits employers from retaliated against employees for exercising their statutory rights.").

[6] Defendants do not argue that Plaintiff failed to engage in protected activity. Therefore, the Court will assume that Plaintiff has engaged in protected activity for the purposes of this motion.

employment decision; and (3) there was a causal connection between her protected conduct and the adverse employment action." *Carrero-Ojeda*, 755 F.3d at 719 (FMLA); *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997) (ADA); *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 707, 947 N.E.2d 520 (2011) (Mass. Gen. Laws ch. 151B); *Benoit v. Echnical Mfg. Corp.*, 331 F.3d 166, 177 n.5 (1st Cir. 2003) (Mass. Gen. Laws ch. 152, § 75B(2)). Of course, a plaintiff "need not plead facts sufficient to establish a *prima facie* case at the pleading stage," *Carrero-Ojeda*, 755 F.3d at 719, but those elements may serve "as a prism to shed light upon the plausibility of a [plaintiff's] claim." *Rodríguez–Reyes v. Molina–Rodríguez,* 711 F.3d 49, 54 (1st Cir. 2013).

### a. Adverse Action

As noted above I find that only the changes to Plaintiff's employment conditions constitute adverse actions. Accordingly, the only viable retaliation claim is her FMLA claim. The remaining protected activities occurred after the adverse actions.[7] *See Germanowski v. Harris*, 854 F.3d 68, 75 (1st Cir. 2017) (dismissing retaliation claim where alleged retaliation preceded protected conduct "and thus cut[ ] against the causal connection [the plaintiff's] complaint need[ed] to make plausible"); *Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 70 (1st Cir. 2015) ("To demonstrated that he was fired in retaliation for engaging in FMLA-protected conduct, [the plaintiff] must show that the retaliator knew about [his] protected activity—after all. One cannot have been motivated to retaliate by something he was unaware of.'" (second alteration in original) (quotation marks and citation omitted)).

Defendants further argue that this principle also "dooms Plaintiff's FMLA claim—at least to the job modifications—because Plaintiff alleges that she knew of these changes before taking

---

[7] On November 30, 2017, Plaintiff reported a work-related injury, her protected acitivy for retaliation under the Workers' Compensation Act. Similarly, on January 3, 2018, Plaintiff first complained about disability-related discrimination and retaliation, her protected activity under the ADA and Chapter 151B. Both of these complaints occurred after the changes to her employment conditions began.

FMLA leave." (Docket No. 7, at 17).  This is not the relevant inquiry.  The proper question is whether Defendants knew of Plaintiff's plan to take leave before modifying her position.  According to Plaintiff, "Defendants informed her that upon her return from leave she would be transferred to the Manufacturing Coordinator II position." (Docket No. 1, ¶ 23).  The most natural reading of Plaintiff's Complaint is that Defendants learned of Plaintiff's plan to take FMLA leave and then decided to change her employment duties when she returned.

### b. Causal Connection

As noted above, although the proximity between Plaintiff's FMLA leave and the changes in her employment conditions undermines the plausibility of some of her claims, that proximity supports the plausibility that Defendants retaliated against her for taking leave.

"'Very close' temporal proximity between protected activity and an adverse action can satisfy a plaintiff's burden of showing causal connection." *Sánchez-Rodríguez v. AT&T Mobility P.R., Inc.*, 673 F.3d 1, 15 (1st Cir. 2012) (quoting *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 25 (1st Cir. 2004)); *see also Wyatt v. City of Boston*, 35 F.3d 13, 16 (1st Cir. 1994) ("One way of showing causation is by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action.").  However, "the notion that temporal proximity is not always enough must also be correct." *Germanowski v. Harris*, 854 F.3d 68, 74 (1st Cir. 2017).  In *Germanowski*, the First Circuit dismissed a retaliation claim for failure to plausibly demonstrate a causal connection where the

> allegations relate[d] a history of an emotionally fraught and longstanding dispute between the employer and the employee, an expressed fear by the employer that the employee may have brought a gun to work, and a subsequent lock-out of the employee, all in a context that caused even Germanowski to suspect imminent termination, and all before she sent her email saying she would be out sick.  To think that an employer in such a case fired Germanowski because she asked for some time off while she was already locked out is to suggest that common sense

borne of real world experience has no role to play in the plausibility analysis. We think otherwise.

*Id.* at 75.

Here, unlike in *Germanowski*, for over fifteen years, Plaintiff had never been formally disciplined and consistently received positive performance reviews. Accepting Plaintiff's allegations as true, it was only after she informed Defendants that she would be taking FMLA leave that her employer began to take adverse actions against her. Accordingly, although it is not always the case, the temporal proximity here makes Plaintiff's claims of retaliation plausible.

Therefore, Count II survives this motion. However, Counts IV, VI, and IX must be dismissed.

## Conclusion

For the reasons stated above, Defendants' motion is ***granted*** in part and ***denied*** in part. Accordingly, Counts II and III survive this motion while Counts I, IV, V, VI, and IX are dismissed. The Court also notes that although Defendants proffered no arguments as to why Counts VII or VIII should be dismissed, the Court finds them plausible insofar as they relate to Count III.

**SO ORDERED**

                                                                          */s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**